IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| George N.S. Jones, Sr., | ) CIVIL ACTION NO. 9:11-2109-GRA-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Warden Leroy Cartledge; Asso. Warden | ) |
| Lewis; Asso. Warden Parker; Sgt. Bell; | ) |
| Corporal Ried; c/o Ward; Sgt. Terry; | ) |
| Lt. Aiken; Capt. Baldwin; Capt. Stevens; | ) |
| Lt. Thompson; and Lt Marshall, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983.

Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations

of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P., on April 19, 2012. As the Plaintiff is proceeding pro se, a Roseboro order was entered

by the Court advising Plaintiff of the importance of a motion for summary judgment and of the need

for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond

adequately, the Defendants' motion may be granted.

After receiving an extension of time, Plaintiff filed a response in opposition to the

Defendants' motion for summary judgment on May 4, 2012. The Defendants filed a reply

- 1 -



memorandum on May 7, 2012, following which Plaintiff filed a second memorandum in opposition on May 18, 2012, following which Defendants filed another reply memorandum on May 22, 2012, following which Plaintiff filed a third memorandum in opposition on May 30, 2012, to which the Defendants filed yet another reply memorandum on May 31, 2012. Plaintiff then sought an extension of time to file yet another response in opposition to the Defendants' motion, which was granted in light of a prison lock down then in effect, following which Plaintiff filed another response in opposition to the Defendants' motion on July 3, 2012, to which the Defendants filed a reply memorandum on July 9, 2012.

Defendants' motion is now before the Court for disposition.[1]

### Background and Evidence

Plaintiff alleges in verified Complaint[2] that he is an inmate at the McCormick Correctional Institution (MCI), part of the South Carolina Department of Corrections. Plaintiff asserts a hodgepodge of claims in his Complaint, which is written in a generally disjointed and confusing style.[3] Plaintiff alleges that the mailroom at MCI is violating his right to mail out legal

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3]During the course of making his allegations, Plaintiff also refers to problems being experienced by other inmates. However, problems or difficulties of other inmates are not prosecutable by the Plaintiff in this lawsuit. See Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981)[a prisoner cannot act as a "knight-errant" for others]; Oxendine v. Williams, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975)[a pro se prisoner unassisted by counsel cannot be an advocate for others

(continued...)



mail because a "Ms. Young" (who is not a named defendant in this lawsuit) is reading his legal mail, along with unnamed "others". Plaintiff also alleges he is having difficulties getting legal documents notarized. Plaintiff specifically alleges that he sent a letter to South Carolina Governor Nikki Haley that was supposed to have been notarized, but that "Ms. Young refused to do so . . . ."

Plaintiff also alleges that he has been to sick call "many times" to see a "Dr. McCree" (also not a named defendant in this lawsuit) only to be turned down "simply because they [have a] malicious attitude". Plaintiff also alleges that in January and February 2009 he did not have "any type of shoes . . . boots to wear" because a "Ms. Andrews" (not a named defendant in this lawsuit) had not ordered the shoes he wanted. Plaintiff did say that a "Nurse Courson" (not a named defendant in this lawsuit) gave him an order to ride in the wheelchair, but that it was then taken away from him by a "Nurse James" (not a named as a defendant in this lawsuit). Plaintiff further alleges that, even though the temperature was below freezing, he was wearing two pairs of socks with flip flops instead of regular shoes.

Plaintiff also alleges that he suffers from degenerative disc disease, a problem with his spine, both upper and lower diabetic neuropathy in his extremities, fibromyalgia, and sleep apnea. Plaintiff alleges that because of his condition he should not be exposed to extreme weather, and that due to Nurse James' negligence he has suffered "excruciating nerve damage" to both of his feet. Plaintiff also alleges that someone named "Boatwright" (not a named defendant in this action)

---

[3](...continued)
in a class action]; Inmates v. Owens, 561 F.2d 560, 562-563 (4th Cir. 1977)[one pro se inmate does not have standing to sue on behalf of another inmate]. See also Myers v. Loudon Co. Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005)[finding that a pro se person's right to litigate for oneself does not create a similar right to litigate on behalf of others]. Therefore, Plaintiff's allegations relating to other inmates have not been considered unless deemed relevant to Plaintiff's own claims.



assaulted and battered him in the presence of Nurse Courson while she was giving him an insulin shot, for which an incident report was filed. Plaintiff also alleges that on June 21, 2011, while he was sitting in the chow hall, Boatwright slammed him on the back. Plaintiff alleges that the Defendants Thompson and Terry, both correctional officers, were present at that time. Plaintiff says he did not report this incident, although he did apparently at some point file a grievance.

Plaintiff alleges that sometime around May 1, 2011 he fell on the floor while exiting his room because the floor was wet due to clothing hanging from an upstairs tier. Plaintiff alleges he notified the Defendant Ward, a correctional officer, that he had fallen, but that Ward refused to write an incident report for Plaintiff to be taken to medical. Plaintiff alleges that Ward was told by the Defendant Ried, another correctional officer, not to write out an incident report since they only had fifteen minutes left before the shift change. Plaintiff alleges that he complained to the Defendants Aiken, Baldwin and Stevens (all correctional officers), but they just said that Plaintiff was faking. Plaintiff alleges he received no response to a grievance and a Request to Staff member request, but that he was examined by a nurse and Dr. McCree about a month later.

Plaintiff alleges that he has also filed a grievance about the "pill line", concerning his having to go to the pill line and/or having his "meds" brought to him when the prison was on institutional lock down, but that he did not receive his meds on time. Plaintiff also alleges that he has received his meds in an amount that was not prescribed by his physician, and that he needs the proper dosage of his meds to keep from having seizures. Plaintiff also alleges that he is a heart patient and likes to have his meds with him at all times. Plaintiff alleges that "Nurse Cushman" (not a named defendant in this lawsuit) takes a long time to give or administer meds, which she does out of "malice". Plaintiff also alleges that he has had problems getting his "particles and fillings" since



– 4 –

2009, and that he has sent an inmate Request to Staff to a "Ms. Freeman" (not named as defendant in this lawsuit), but that he has yet to see the "dental doctor" for what he wants.

Finally, Plaintiff alleges that he has been subjected to a "continuous pattern . . . concerning my disciplinary since 1995 through 2008 that do not hold merit . . . ." Plaintiff has attached copies of numerous grievance documents to his verified Complaint, but he does not request any particular relief.[4]  See generally, Verified Complaint, with attached exhibits.

In support of summary judgment in the case, the Defendant Alvochino Reid (correct spelling) has submitted an affidavit wherein he attests that he is a Corporal at MCI.  Reid attests that he has no direct involvement with the handling of inmate mail, but to the best of his knowledge Plaintiff's mail has been handled appropriately.  Reid further attests that he is not directly involved in the medical care of inmates, and has no first hand knowledge concerning the medical care provided to the Plaintiff.  Reid also attests that he does not have any advanced medical training, and relies on the trained medical personnel at MCI to provide proper medical care to all inmates.  Reid attests that he does not recall any incidents where the Plaintiff complained to him about lack of or improper medical care, that he does not attempt to make medical decisions, and instructs inmates to sign up for sick call if they need medical attention.  If an inmate states he needs immediate medical attention, Reid attests that he contacts medical personnel and follows their instructions.

Reid attests that wheelchairs are kept in the dorms for inmates who have difficulty

---

[4]This omission alone is sufficient to justify dismissal of Plaintiff's case.  See Humphreys v. Renner, No. 94-2071, 1996 WL 88804 (N.D. Cal., February 26, 1996) [When a plaintiff fails to ask for relief, a federal district court "is faced with the prospect of rendering an advisory opinion; federal courts may not render advisory opinions,"] following FCC v. Pacifica Foundation, 438 U.S. 726, 735 (1978)("[F]ederal courts have never been empowered to issue advisory opinions."); see Herb v. Pitcairn, 324 U.S. 117, 126 (1945)("We are not permitted to render an advisory opinion[.]").



walking, and that there are specific inmates designated to push other inmates to the medical department. There are also inmates who work in the medical department who will go and transport inmates to the medical department if necessary. Reid attests that he is not aware of medical personnel stating that Plaintiff could not be transported in a wheelchair, but defers to medical personnel as to whether Plaintiff needed or did not need a wheelchair. Reid attests that at no time did he take any action to deny Plaintiff proper medical care.

Reid attests that he does not recall speaking with Plaintiff concerning an alleged fall on May 1, 2011, he was not present and had no involvement of any kind with any fall on that date, and that he has no information concerning this incident. Reid further attests that he did not instruct the Defendant Ward not to prepare an incident report in relation to this matter, and in fact had no communications or conversations of any kind with Ward concerning this incident. See generally, Reid Affidavit.

The Defendant James Baldwin has also provided an affidavit wherein he attests that he is a Captain at MCI. Baldwin attests to the same level of responsibility and knowledge concerning Plaintiff's mail and medical care as does Reid. Baldwin further attests that he does not recall speaking with Plaintiff concerning an alleged fall on May 1, 2011, he was not present and had no involvement of any kind with any such alleged fall, and that he has no information concerning this incident. See generally, Baldwin Affidavit. The Defendant James Bell has submitted an affidavit attesting to these same facts. See generally, Bell Affidavit.

The Defendant James Parker submitted an affidavit wherein he attests that he is the Associate Warden at MCI, where he has broad supervisory responsibilities. Parker attests that he has no direct involvement in the handling of inmate mail or medical care of inmates, has no medical



training, and relies on medical personnel to make decisions regarding medical care for inmates. Parker attests that, to the best of his knowledge, Plaintiff's inmate mail has been handled appropriately and he has been provided with appropriate medical care. Parker attests that he receives numerous requests from inmates each day on a variety of issues, an average of thirty or more a day, including several Requests to Staff from the Plaintiff, and that to his knowledge he has responded to all of these requests. Parker attests that he has no personal recollection, and has not been able to locate, any Requests to Staff from the Plaintiff concerning an alleged fall on May 1, 2011 or with regard to his medical care in relation to the alleged fall. Parker attests that if he had received such a Request to Staff from the Plaintiff, he would have forwarded it to the medical department for a response. See generally, Parker Affidavit.

The Defendant James Thompkins (correct spelling) has submitted an affidavit wherein he attests that he is a Lieutenant at MCI. Thompkins attests to the same information regarding inmate mail and inmate medical care as Baldwin, Reid and Bell. With respect to the alleged fall of May 1, 2011, Thompkins attests that he was not present, does not recall speaking with the Plaintiff concerning this alleged fall, had no involvement of any kind with this alleged fall, and has no information concerning this incident. With respect to Plaintiff's allegation in his Complaint that he was assaulted by someone named "Boatwright", Thompkins attests that he is not aware of any officer with the last name Boatwright. Thompkins attests that he does recall an inmate with the last name Boatwright who was assigned as a wheelchair pusher, but that Boatwright is no longer at MCI and Thompkins believes he has been released from the SCDC. Thompkins attests that he does not recall any incidents where he observed Boatwright or any other individual assaulting the Plaintiff, and that had he observed this, he would have taken immediate action. Thompkins attests



that Plaintiff alleges that an incident with Boatwright occurred in the cafeteria, where during meal times there are generally two hundred or more inmates and only three or four officers, and that in such a situation they would have immediately taken steps to control the situation so that the matter did not escalate, since officers in the cafeteria would be in a potentially dangerous situation if there was an escalation of any disturbance. <u>See</u> <u>generally</u>, <u>Thompkins Affidavit</u>.

The Defendant James Ward has submitted an affidavit wherein he attests that he is a Correctional Officer at MCI. Ward attests to the same information regarding the handling of inmate mail and inmate medical care as has previously been provided. Ward further attests that, while he does not recall the date, he does recall an incident where Plaintiff claims he was injured when he fell because of moisture on the floor. Ward attests that he did not witness Plaintiff fall, but that several inmates came to him stating that Plaintiff had fallen. Ward attests that he immediately proceeded to check on the Plaintiff and found him on the floor in front of the showers. Ward attests that he instructed several inmates who were present to assist the Plaintiff into a wheelchair, and he [Ward] immediately contacted medical personnel. Ward attests that he was instructed to send Plaintiff to the medical department, so an inmate was told to push Plaintiff in the wheelchair to the medical department. Ward attests that he did not accompany Plaintiff to the medical department, but did stop by medical when he was leaving the institution to make sure that Plaintiff was being seen. Ward attests that since he did not see what had actually happened, he did not prepare an incident report concerning this matter, nor does he recall Plaintiff asking him to prepare an incident report. Ward further attests that he is certain that no supervisor instructed him not to complete an incident report, and does not even recall Corporal Reid being present when this incident occurred or having any involvement of any kind in relation to this matter. <u>See</u> <u>generally</u>, <u>Ward Affidavit</u>.



The Defendant Joseph Stevens has submitted an affidavit wherein he attests he is a Captain at MCI. Stevens otherwise attests to the same information concerning inmate mail and inmate medical care as has previously been provided, that he does not have advanced medical training and would defer to medical personnel as to whether the Plaintiff needed or did not need a wheelchair, and that at no time did he take any action to deny Plaintiff proper medical care. Stevens further attests that he does not recall speaking with Plaintiff concerning any alleged fall on May 1, 2011, that he was not present and had no involvement of any kind in any such alleged fall, and that he has no information concerning this incident. <u>See</u> <u>generally</u>, <u>Reid Affidavit</u>.

The Defendant Leroy Cartledge has submitted an affidavit wherein he attests that he is the Warden at MCI, and is responsible for the overall operation of the Institution. Cartledge attests that he has no knowledge of the matters sets forth in this lawsuit. Cartledge further attests that if he had received correspondence from the Plaintiff concerning his medical care, he would have forwarded any requests to the medical department for a response. <u>See generally</u>, <u>Cartledge Affidavit</u>.

The Defendant Scott Lewis has submitted an affidavit wherein he attests that he is an Associate Warden at MCI, where he has broad supervisory responsibilities. Lewis attests that he had no direct involvement in any of allegations of Plaintiff's Complaint. Lewis further attests that he receives on average thirty or more requests to staff from inmates each day, and that he has no personal recollection, and has not been able to locate, any requests to staff from the Plaintiff concerning an alleged fall on May 1, 2011 or his medical care in relation to the alleged fall. Lewis attests that if he had received a Request to Staff from the Plaintiff concerning his medical care, he would have forwarded his request to the medical department for a response. <u>See</u> <u>generally</u>, <u>Lewis Affidavit</u>.



The Defendant Stanley Terry has submitted an affidavit wherein he attests that he is a Sergeant at MCI. Terry attests to the same information concerning inmate mail and medical care for inmates as has previously been provided. With respect to the alleged fall of May 1, 2011, Terry attests that he was not present, does not recall speaking with Plaintiff concerning an alleged fall, had no involvement of any kind with any such alleged fall, and has no information concerning this incident. Terry further attests to the same information concerning Plaintiff being assaulted by someone named "Boatwright" as did Thompkins. See generally, Terry Affidavit.

The Defendant Stephanie Marshall has submitted an affidavit wherein she attests she is a Lieutenant at MCI. Marshall attests that she has no direct involvement with the handling of inmate mail, but to the best of her knowledge Plaintiff's mail has been handled appropriately. Marshall attests that she is a notary public and will notarize documents for inmates upon request, and does not recall any occasion where she refused to notarize any document for the Plaintiff nor any incidents where Plaintiff requested that she notarize a document for him. Marshall attests that there was a short time when her notary had expired and she informed inmates she would not be able to notarize any documents until her notary was reissued. Marshall attests that she is not directly involved in the medical care of inmates, and does not recall any incident where Plaintiff complained to her about the lack of or improper medical care. Marshall attests that if Plaintiff had done so, she would have instructed him to sign up for sick call, or if immediate attention was required, she would have contacted medical personnel and followed their instructions. With respect to an alleged fall by the Plaintiff on May 1, 2011, Marshall attests that she does not recall speaking with Plaintiff concerning this incident, that she was not present and had no involvement of any kind with respect to this incident, and has no information concerning this incident. See generally, Marshall Affidavit.



The Defendant Valorie Aikens (correct spelling) has submitted an affidavit wherein she attests that she is a Lieutenant at MCI, that she has no direct involvement in the handling of inmate mail or with inmate medical care, and at no time took any action to deny Plaintiff proper medical care. Aikens attests that she instructs inmates to sign up for sick call if they need medical attention, or if an inmate states they need immediate medical attention, she contacts medical personnel and follows their instructions. Aikens attests that she does not recall speaking with Plaintiff concerning any alleged fall on May 1, 2011, she was not present and had no involvement of any kind in any such alleged fall, and has no information concerning this incident. See generally, Aikens Affidavit.

Finally, the Defendants have submitted an affidavit from Nadine Pridgen, who attests that she is Director of Health Information Resources with the South Carolina Department of Corrections. Pridgen attests that she has attached to her affidavit a copy of the Plaintiff's medical records, setting forth the care and treatment of the Plaintiff by SCDC from January 1, 2011 to the present. See generally, Pridgen Affidavit, with attached exhibit [Medical Records]. These medical records note that Plaintiff was seen in the medical department on May 1, 2011, where he was brought via wheelchair after a fall. The docket entry notes that Plaintiff stated that there was water on the floor as he was on his way to the day room, and that he "had on his shower shoes and they made him slip". Plaintiff stated that he did not hit his head on anything, but had fallen on his right knee and then fell backwards on his back. Plaintiff complained of pain with flexion of the knee, but otherwise there was "no visible injury noted, no scratches or abrasions noted. No red areas noted. Was able to bend at waist with minimal distress". Plaintiff was diagnosed with musculoskeletal discomfort, given some medications, and advised to restrict strenuous activities. See Exhibit [Medical Records],



pp. 14-15.

## Discussion

As noted, the Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the allegations of the Complaint, the arguments of the parties, and the evidence submitted, the undersigned finds and concludes for the reasons set forth hereinbelow that Plaintiff's claims are without merit, and that the Defendants are entitled to summary judgment in this case.

First, with respect to Plaintiff's complaints about his legal mail, no Defendant named in this action is even alleged to have had anything to do with Plaintiff's mail, legal or otherwise.



Zentmyer v. Kendall County, Ill., 220 F.3d 805, 811 (7th Cir. 2000)[Liability under § 1983 arises only when a plaintiff can show that a defendant acting under color of state law was "'personally responsible for a deprivation of a constitutional right.'"] (quoting Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996)).  If a named Defendant is not alleged to have been personally involved in violating Plaintiff's federal rights, liability under § 1983 may not be imposed upon them.  See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999) ("Liability under § 1983 must be based on the personal involvement of the defendant.").  Further, even if a proper defendant had been named, Plaintiff has provided no evidence whatsoever to establish a genuine issue of fact as to whether anyone is "reading" his legal mail.  House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].[5]

To the extent Plaintiff has intended to imply that the alleged conduct with respect to his legal mail has affected his access to the courts, Plaintiff has provided no evidence, or even argument, to show that any problems he is allegedly having with his legal mail has prejudiced him in his ability to access the courts.  Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury].  The only named Defendant who may even be related to this claim is the Defendant Marshall, who attests that she sometimes notarizes documents for inmates.  However, there is no evidence that

---

[5]The only exhibits Plaintiff has submitted are the grievance documents attached to his verified Complaint, none of which even deal with this issue.

- 13 -



Marshall ever refused to notarize any document for the Plaintiff. She specifically denies ever having done so, and Plaintiff does not even reference her with respect to this claim in his Complaint.[6] This claim is therefore without merit. Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; see Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue].

      With respect to Plaintiff's claim that he fell on a wet floor, Plaintiff's allegations again do not establish a genuine issue of fact as to whether his constitutional rights were violated. Slipping and falling on a wet floor is not a violation of a constitutional right. Even assuming that the Defendant Reid and/or the Defendant Ward refused to write an incident report regarding this alleged fall, as Plaintiff alleges, that is also not a violation of a constitutional right. Further, Plaintiff's medical records reflect that he was seen that day and again the following day, and there is no indication in Plaintiff's medical records of any constitutional violation occurring with respect to the medical care Plaintiff received. See Defendants' Exhibit [Medical Records], pp. 14-15. To the contrary, this evidence reflects that Plaintiff was seen by medical personnel, was provided

---

[6]Indeed, in his last response in opposition to the Defendants' motion for summary judgment, Plaintiff identifies "Ms. Young and Ms. Franklin" (neither of whom are named as defendants in this lawsuit) as interfering with his mail and refusing to notarize court and other legal documents. See Court Docket No. 52, p. 37. However, even with respect to this argument in his brief, Plaintiff has provided no evidence to support this general and conclusory claim, nor has any injury been shown as a result of this alleged conduct. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["even though pro se litigants are held to less stringent pleading standards than attorneys, the Court is not required to 'accept as true legal conclusions or unwarranted factual inferences'"]; Cochran, 73 F.3d at 1317 [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury].



medical services and medications for his injuries, and given instructions on activities. <u>Id</u>.  In order to proceed with this claim, the Plaintiff must have evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Farmer v. Brennen</u>, 511 U.S. 825, 834-835 (1994); <u>Sosebee v. Murphy</u>, 797 F.2d 179 (4th Cir. 1986); <u>Wester v. Jones</u>, 554 F.2d 1285 (4th Cir. 1977); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975); <u>Belcher v. Oliver</u>, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to do so, and this claim is therefore without merit.  <u>See</u> <u>Levy v. State of Ill. Dept. of Corrections</u>, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting <u>Farmer</u>, 511 U.S. at 837.

Plaintiff also appears to allege in his Complaint that he grieved this matter and/or filed Inmate Requests but never received a reply.  However, even assumed to be true for purposes of summary judgment, these allegations do not state a constitutional claim.  <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991); <u>Brown v. Dodson</u>, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; <u>Azeez v. DeRobertis</u>, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; <u>Burnside v. Moser</u>, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005); <u>Keeler v. Pea</u>, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); <u>see</u> <u>also</u> <u>Scott v. Hamidullah</u>, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing <u>Riccio v. County</u>



of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["[T]he failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

Plaintiff also makes several claims and allegations relating to his medical care in general, including that he did not get medications on time or that they were not in proper dosages, and setting forth a variety of medical problems from which Plaintiff alleges he suffers. Several of the grievance documents attached to Plaintiff's Complaint deal with these claims; however, none of these exhibits establish that Plaintiff was being provided with improper medical care - to the contrary, these exhibits all have responses indicating that Plaintiff was receiving proper medical care. See Plaintiff's Exhibits. Plaintiff's medical records, a copy of which have been provided by the Defendants, also do not evidence any deliberate indifference to Plaintiff's serious medical needs, and with respect to the period of time prior to when the provided medical records begin, there is again no *evidence* of a constitutional violation. Rather, Plaintiff simply alleges that due to the "negligence"[7] of an individual who is not even a Defendant in this case ("Nurse James") he suffered "excruciating nerve damage" to both of his feet. Plaintiff has presented no medical evidence to

---

[7] An allegation of negligence fails to state a constitutional claim under § 1983. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].



support this conclusory claim whatsoever. <u>House</u>, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]. Further, Liability under § 1983 arises only when a plaintiff can show that a named defendant acting under color of state law was "'personally responsible for a deprivation of a constitutional right.'" <u>Zentmyer</u>, 220 F.3d at 811.

As for Plaintiff's allegations that he did not receive proper medications or received his medication in improper amounts, as well as that he has been denied dental work (teeth cleaning and fillings) that he wants, in the absence of any medical evidence to support the general and conclusory claims of Plaintiff's Complaint or that show that a named Defendant was *deliberately indifferent* to Plaintiff's *serious* medical needs, there is no basis for which this claim to go forward. <u>See</u> <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; <u>see also</u> <u>Scheckells v. Goord</u>, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing <u>O'Connor v. Pierson</u>, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; <u>Morgan</u>, 829 F.2d at 12 (6th Cir. 1987) ["Even though <u>pro se</u> litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; <u>Green v. Senkowski</u>, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; <u>Levy</u>, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety."]. Plaintiff has failed to present evidence to show that a named defendant was deliberately indifferent to a serious medical need, and he must

– 17 –



do more than make mere conclusory statements to state a claim. <u>Brown v. Zavaras</u>, 63 F.3d 967 (10th Cir. 1995); <u>Adams v. Rice</u>, 40 F.3d 72 (4th Cir. 1994); <u>White v. White</u>, 886 F.2d 721, 723 (4th Cir. 1989) (complaint dismissed because "failed to contain any factual allegations tending to support his bare assertion"); <u>cf</u>. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)[Plaintiff must plead specific acts or omissions by a named Defendant].

With respect to the general conditions of Plaintiff's confinement, he complains about wearing two pairs of socks with flip flops instead of shoes during the months of January and February, but otherwise sets forth no cogent argument to support a conditions of confinement claim, nor has he presented any evidence sufficient to give rise to a genuine issue of fact as to whether the conditions of his confinement amount to a constitutional violation. Certainly, the type of footwear Plaintiff was provided (comparing two pairs of socks and flip flops with a regular pair of shoes) , standing alone, does not create a question of fact as to whether a constitutional violation occurred. <u>See</u> <u>Rish v. Johnson</u>, 131 F.3d 1092, 1096 (4th Cir. 1997) ["[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995)["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eight Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]; <u>Farmer</u>, 511 U.S. at 834-835 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the



knowledge that harm [would] result"]; <u>cf.</u> <u>Baker</u>, 443 U.S. at 146 [§ 1983 claim does not lie for violation of state law duty of care].

Plaintiff also alleges that on June 21, 2011, while he was sitting in the chow hall, someone named "Boatwright" slammed him on the back, and that Boatwright also at another time engaged in some type of unspecified physical conduct involving Plaintiff in the presence of a "Nurse Courson". Plaintiff does not identify who this individual is, but according to the Defendants' evidence this was apparently another inmate. In any event, these allegations do not give rise to a genuine issue of fact as to whether any named Defendant violated the Plaintiff's constitutional rights. In order to avoid summary judgment on this claim, Plaintiff must present evidence sufficient to demonstrate that a named Defendant put his personal safety at risk by allowing Boatwright to be around him; i.e., that a named Defendant allowed Plaintiff to be incarcerated "under conditions posing a substantial risk of serious harm"; <u>Brown v. Harris</u>, 240 F.3d 383, 388-389 (4th Cir. 2001), quoting <u>Farmer</u>, 511 U.S. at 834; and that the offending official(s) had "a sufficiently culpable state of mind". <u>Farmer</u>, 511 U.S. at 834.

In other words, a prison official cannot be found liable for a constitutional violation "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference". <u>Farmer</u>, 511 U.S. at 837; <u>see</u> <u>also</u> <u>Pruitt</u>, 2003 WL 23851094 at * 9 [Only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states a constitutional claim]; <u>Levy</u>, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety]. Plaintiff has presented no evidence to show that any



- 19 -

named Defendant was deliberately indifferent to a known risk of harm to him from an inmate named Boatwright, or anyone else. Farmer, 511 U.S. at 842 [To establish a prima facie case of deliberate indifference a plaintiff must show "that a substantial risk of [serious harm] was long standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it"]; cf. Parrish v. ex rel. Lee v. Cleveland, 372 F.3d 294, 302-303 (4th Cir. 2004)[Situation must be evaluated as the officers reasonably perceived it, "not as it now may be perceived enlightened by the benefit of hindsight"].

Finally, it is noted that in his numerous responses to the Defendants' motion for summary judgment, Plaintiff continually discusses or makes reference to other matters and issues which have not been asserted as claims in his Complaint. With respect to any such issues, they have generally not been addressed by the Defendants in any of their reply memoranda, and the undersigned has not addressed them as exhausted claims in this lawsuit. Plaintiff did file a motion to amend his Complaint on July 3, 2012, seeking to add four additional Defendants (two with respect to his medical claims and two with respect to his mailroom claims), which should be **denied** as having been filed manifestly out of time. Further, Plaintiff's motion to amend adds no additional claims or allegations to his Complaint, which the undersigned has already found hereinabove does not contain sufficient factual allegations, supported by probative evidence, to survive summary judgment.

Plaintiff has also filed a motion for a temporary restraining order, to prevent his being transferred to a different prison, which should also be **denied**. Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular



institution,..., [or] to receive a particular security classification...."]; <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].

### **Conclusion**

Based on the foregoing, it is recommended that Plaintiff's pending motons to amend and for a TRO both be **denied**, that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 21, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

